IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville November 28, 2017

## STATE OF TENNESSEE v. ARTT TANNER HORNE

**Appeal from the Criminal Court for Davidson County**
No. 2015-B-871     Cheryl Blackburn, Judge

_____

### No. M2017-00752-CCA-R3-CD

_____

After a bench trial, a judge found the Defendant, Artt Tanner Horne, guilty of theft of property valued less than $500 and sentenced him to eleven months and twenty-nine days of unsupervised probation. The trial court also ordered that he stay away from Walmart, where the theft occurred, and continue with his mental health treatment. On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and J. ROSS DYER, J. joined.

Newton S. Holiday, III, (at trial) and Nicholas Tuck McGregor (on appeal), Nashville, Tennessee, for the appellant, Artt Tanner Horne.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Glenn R. Funk, District Attorney General; Nathan Kristin McGregor, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from an incident at Walmart wherein the Defendant was accused of stealing a toaster oven. The Davidson County grand jury indicted the Defendant for theft of property valued less than $500. The Defendant waived a right to a trial by jury and proceeded to a bench trial.

During the Defendant's bench trial, the parties presented the following evidence: Amber Martin testified that she worked at Walmart in the loss prevention department at

the time of this incident. When she was working on October 9, 2014, the Defendant came into the store, as could be seen in the surveillance video from the store that day. The video was entered into evidence. Ms. Martin said that she noticed the Defendant on the surveillance videos because he was looking around for cameras, so she began following him by camera through the store.

Ms. Martin testified that the Defendant placed a toaster oven in his cart and paid for it. He left the store and then came back into the store a few minutes later. The Defendant then placed the same make and model toaster oven in his cart, along with some bananas. Ms. Martin said that the video surveillance showed the Defendant getting into a line, then putting the bananas in a random place on a shelf, and then exiting the store with the toaster oven in his cart. He was not seen paying for the toaster oven.

Ms. Martin said that she watched the Defendant on surveillance video exit the first set of doors and then went to the front of the store to stop him. She approached him with another loss prevention associate. The Defendant was cooperative and returned to the store with her. The Defendant gave Ms. Martin his identification, and Ms. Martin copied some of the Defendant's information onto a reporting sheet. The Defendant asked her why she apprehended him, and she said for his unpaid toaster oven. The Defendant then pulled out a receipt for a toaster oven and said that he had paid for it. Ms. Martin said that she told the Defendant that his receipt was for the toaster oven he purchased earlier, and the Defendant said that he did not have to stay in the office and left with the toaster oven. Ms. Martin said that she was not "allowed" to stop the Defendant from leaving, but she had already called the police department and was hoping they would respond before he left. As the Defendant left, he expressed anger that Ms. Martin had made him "miss [his] bus." Ms. Martin said that the video footage showed the Defendant leave the store and get into a car.

Ms. Martin said that when she saw the Defendant get into his car on the surveillance camera, she ran out to the car. She saw two toaster ovens in the backseat of his car. The Defendant drove away.

Ms. Martin identified the Defendant's receipt, which indicated a time of 3:39 p.m. and showed the purchase price of $49.96. The receipt indicated that it was from register number twelve. Ms. Martin testified that the surveillance video from the Defendant's second return trip into the store was from 4:00 p.m. until 4:10 p.m. Accordingly, the video was for a time frame after the Defendant had purchased the first toaster oven. Ms. Martin said that she had previously seen other customers use this tactic to steal from Walmart.

During cross-examination, Ms. Martin identified a receipt with the date of the

incident, October 9, 2014, and time stamped 3:58:45 p.m. showing the purchase of a toaster oven.

During redirect examination, Ms. Martin testified that the surveillance video, which is synchronized with the registers, showed that the Defendant did not make a purchase at 3:58 p.m. At that time, he was on the video in the grocery section headed toward the front registers.

Brian Hicks, a Walmart employee, identified the receipt for a toaster oven the Defendant said that showed he purchased a second toaster oven in the electronics department on October 9, 2014, at 3:58 p.m. The face of the receipt appeared to indicate that the purchase was made at that date and time. Mr. Hicks testified that the Walmart store used technology that allowed him to scan the bar code on receipts and ascertain the history of any particular item. The receipt produced by the defense showed that the item was purchased on register 67, which was located in the electronics department. The item was purchased at 3:58 p.m. Mr. Hicks said that he cross-referenced this receipt with Walmart's computer system, and it appeared that there was no such purchase at register 67 at that date and time.

Mr. Hicks said that, armed with this information, he asked the customer service department and asked them to scan the receipt's barcode. The bar code indicated that the transaction had occurred on register 67 but that the item was purchased November 2, 2014 at 2:49 p.m., almost a month after this incident. Everything on the face of the receipt was correct except the date and time. The receipt number also did not match the sequence for register 67 on October 9, 2014, but did match for November 2, 2014. Mr. Hicks opined that the receipt had been forged. He said he could only base this upon the fact that the surveillance and internal records proved the receipt was false.

Mr. Hicks testified that the store's records indicated that, after the Defendant's initial purchase of a toaster oven on October 9, 2014, no one bought a toaster oven from the store that day until 6:11 p.m.

During cross-examination, Mr. Hicks testified that when he reviewed Walmart's register system, he found no anomalies or errors for October 9, 2014. During redirect examination, Mr. Hicks said that the toaster oven purchase on November 2, 2014, was a cash purchase, meaning there would be no way to confirm the date with a credit or debit card.

The Defendant testified that he had viewed the videotape of the Walmart transaction. He explained that he went to the kitchen department, got the toaster oven, and put it in his basket. He purchased the toaster oven with his credit card. When he left

the store, he spoke with a friend, "Meko," who wanted to purchase a housewarming gift for a friend. He told her that he was at Walmart and could pick it up for her. He noted that the video did not show him with a receipt in his hand when he returned to the store. He put another toaster oven in his basket and saw a white man standing at the electronics department. The man immediately checked him out, and he purchased the toaster oven.

The Defendant described his actions in going other places in the store, and he noted that there were four or five minutes where there is no surveillance video of him. The Defendant's account then comported with the other witnesses until he was stopped by security. He testified that, after showing security his receipt, they apologized to him, returned his driver's license, and told him that he was free to leave. The Defendant said that, as he was leaving, he said "[H]ey, you all might hear [from] my attorney about this." He said that, when he said this, everyone in the loss prevention department looked at him and did not say anything.

The Defendant said he left and went to his car. The Defendant said that he cooperated with the loss prevention officers and that he was "victimized" by this incident. The Defendant said that he paid for both toaster ovens, and he expressed his belief that his prosecution was based on the fact that the prosecutor had a problem with the fact that "some people just don't have enough money on their credit card if they got money in their pocket." The Defendant identified his bank statement that showed that he made a purchase at Walmart on the day in question for $54.48. He said that he made the second purchase in cash and that he received a receipt for both transactions. He said that he showed the receipt that showed he paid in cash in the electronics department to the loss prevention employees, who then apologized to him and returned his license. The Defendant said that he thought that this was the end of the incident until police officers came to his home at 2:30 a.m., telling him that there was a warrant for his arrest.

During cross-examination, the State asked the Defendant if the second receipt that he had produced was from a transaction that occurred on October 9, 2014. The Defendant said that he purchased the toasters on the same day and that the store must have given him a receipt that had the incorrect transaction number listed. The Defendant reminded the State that he was, in fact, the victim in this case. The Defendant agreed that he was out on bond on November 2, 2014, but he said he did not purchase a second toaster oven at Walmart on that date.

On redirect examination, the Defendant testified that he had no control over the receipt that he was given by the cashier, or the computer system, or the registers. He was just a customer there to make a purchase.

After the conclusion of the evidence and the arguments of the parties, the trial

4

court found the Defendant guilty of theft of property valued at less than $500. The trial court sentenced the Defendant to eleven months and twenty-nine days of unsupervised probation and ordered him to stay away from Walmart. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction for theft because the evidence did not show that he intended to deprive Walmart of their property. He contends that he produced an "authentic receipt" that showed a "real purchase" and that a "real purchase proves no intent to deprive the receipt issuer of their property." The Defendant asserts that Ms. Martin testified that the "3:58pm receipt [wa]s valid" and that she should be believed. If that receipt was valid, he asserts, then there is no proof that he deprived Walmart of the toaster oven. He further asserts that the evidence is insufficient because the State did not offer video surveillance footage from the electronics cash register where the "3:58pm" transaction occurred. Finally, he asserts that the State did not prove that the Walmart cameras were in sync with the cash registers on the day in question. The State counters that it offered proof that the "3:58pm" receipt was forged and invalid. The State further counters that the Defendant's other two contentions go to the weight of the evidence not to whether the evidence is insufficient to sustain his conviction. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by [the trier of fact] . . . accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A person commits theft of property if that person: (1) "knowingly obtains or exercises control over the property," (2) "with intent to deprive the owner" of the property, and (3) "without the owner's effective consent." T.C.A. § 39-14-103 (2014). In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. At the time of this offense, theft of property valued under $500 was a Class A misdemeanor. T.C.A. 39-14-105(a)(1).

In the case under submission, the evidence, viewed in the light most favorable to the State, proved that the Defendant entered Walmart and looked around suspiciously, drawing Ms. Martin's attention. She followed the Defendant through the store by

6

camera, watched him legally purchase a toaster oven, and then watched him exit the store. She then saw the Defendant re-enter the store, again looking around suspiciously, so she again followed him by camera. Ms. Martin watched him get another toaster oven and place it in his basket. She saw him on camera, the footage of which was entered at trial, walking toward the front of the store at 3:58 p.m. The Defendant added bananas to his basket, got into a checkout line, and then removed the bananas from his cart and proceeded to exit the store. Ms. Martin stopped the Defendant, who produced the receipt from the first transaction as proof that he had purchased the subsequent toaster oven.

Before trial, the Defendant produced a receipt for a second toaster oven, dated at 3:58 p.m. on the same day as the purchase of the first toaster oven, October 9, 2014. Walmart's loss prevention witness testified that this receipt appeared to be forged in that the date and the time listed on the receipt did not correspond with the date and time of the transaction number. The transaction number indicated that the toaster oven was not purchased until November. Further, he testified that Walmart's records indicated that no one purchased a toaster oven from the cash register in the electronics department on October 9, 2014, around the time the Defendant was in the store.

The trial court did not err when it determined that the evidence proved that the Defendant did not purchase the second toaster oven on October 9, 2014. Therefore, it is sufficient to prove that he knowingly, with intent to deprive Walmart, obtained or exercised control over Walmart's property without Walmart's effective consent. He is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE